BERGEN COUNTY COURT OF COMMON PLEAS.

LOUIS ZUGA, PETITIONER-RESPONDENT, v. FORD MOTOR
COMPANY, RESPONDENT-APPELLANT.

Decided January 24, 1938.

For the respondent-appellant, *McCarter & English*.

For the petitioner-respondent, *Skeffington & Walker*.

LEYDEN, C. P. J. This appeal of the Ford Motor Company, hereafter called the employer, from an award for increased disability granted to Louis Zuga, hereafter called the employe, is interesting as illustrative of the lengths to which compensation matters sometimes go.

The employe worked for the employer for eleven years, not as an ordinary workman, but as what is known in the trade as a "pusher." A pusher, it appears, is in charge of a group of men and is responsible for the maintenance of the production schedule at his point in the assembly line. His long employment in such capacity is a fact of peculiar significance as will presently appear. On May 8th, 1933, he informed the plant physician, a Dr. Mockett, that he had a pain in the right side of his abdomen. He was examined, a tentative diagnosis of appendicitis or kidney pathology made and he was referred to his family physician. The significant fact is

the employe, in view of his long employment and his knowledge that the employer maintained a fully equipped first aid department for the immediate treatment of injuries, with a registered physician and nurses in constant attendance, gave no history of the happening of any accident whatsoever. He consulted Dr. Abels, a physician of his own selection who specializes in urology, and gave a history that the pain of which he complained had existed for the past six months and was getting progressively worse. Objectively, Dr. Abels found he was suffering from a congenital condition, namely, a kink in the right ureter due to adhesions and recommended operative intervention. The employe requested the physician to assist in an endeavor to recover from the employer on the basis of an accident, but the physician properly declined, advising him that his condition was not due to trauma, he was born with it. Dr. Abels made a written report of his diagnosis which was submitted to Dr. Mockett, on the strength of which the employe was given a leave of absence for illness. When this leave was granted, again no complaint or report was made by the employe of the happening of an accident arising out of and in the course of his employment. Dr. Daly, a urologist and surgeon, was consulted by the employe on July 24th, 1933, and he performed the suggested operation on August 19th, 1933. His post operative diagnosis was "congenital angulation of the right ureter." In his opinion, based of course upon actual knowledge of the condition as disclosed by the operation, the angulation or kink of the right ureter was due to a congenital malformation and the employe's alleged disability was caused by the dilatation of the ureter above the kink due to the partial blocking of the tube at that point.

Three weeks prior to the date of the operation the employe, on July 29th, 1933, filed his original petition for compensation, alleging that on May 4th, 1933, at three-twenty-five P. M., he met with an accident arising out of and in the course of his employment, in that he strained himself while attempting to lift a bench weighing five hundred pounds on a hand truck. He alleged he was compelled to stop work imme-

diately—although the record indicates he worked until June 2d, 1933—and claimed permanent injury to the right side and back and sprain of the spermatic cord.

The matter came on for hearing on May 17th, 1934, before Referee Wegner, at the outset of which the attorney for the employe moved the amendment of the petition to read "that the petitioner has a permanent injury to his right side and back and a strain of the urethra; that is, an aggravation of a pre-existing or a congenital condition resulting in a disability to him as a result of this strain while lifting a table." The following colloquy between counsel then took place:

"Mr. Baer: In other words, the petition is amended now to allege an aggravation? Mr. Skeffington: That is correct. Mr. Baer: Rather than an injury? Mr. Skeffington: Yes."

The permanency of the disability of the employe was, then, an issue *inter alia,* to be determined at that trial. After hearing the testimony of the employe and that of his witnesses regarding the happening of the accident, and the conflicting opinions of the doctors as to the extent of the disability, the referee, under date of June 20th, 1934, sent an opinion letter to counsel, the material portion of which is as follows:

"I have carefully considered all the facts in connection with the above case as well as the medical testimony of the various doctors.

"There is no question that the petitioner was suffering from a pre-existing condition, namely, right ureter pulled over to the median line, thus forming what would appear to be a kink, with a decided hydroureter above this point, further that the hydroureter is very well defined. The trauma caused an aggravation at the point of the kink but in my opinion this aggravation was only of a temporary nature.

"I do feel that eventually, regardless of whether or not the petitioner met with an accident it would have been necessary for him to have this operation performed, I am therefore finding as follows:

"Temporary disability—from June 2d, 1933, date petitioner stopped work, until January 1st, 1934, at $17.33 per week.

"Permanent disability—none."

The conclusions thus reached were incorporated in the original determination and order dated July 10th, 1934, except the words "permanent disability none" were left out by the draftsman. The award thus made, with the usual incidentals, amounted to the sum of $519, for which a check was tendered to the employe on July 12th, 1934, and returned, refused, on January 8th, 1935. Thereafter the employe reconsidered his refusal to accept the award and it was paid to him on February 20th, 1935.

The record further discloses that on December 26th, 1935, a new petition for increased disability was filed and hearings held thereon before the same referee commencing May 20th, 1937. It is from the determination and rule for judgment on this second petition awarding the employe compensation for permanent disability of fifteen per cent. or seventy-five weeks at $17.33 per week and the usual incidentals, that the present appeal has been taken.

No appeal was taken to the Pleas from the original determination by either party, although it is manifest that the employe was dissatisfied therewith from his refusal to accept the award for so long a period of time. An examination and consideration of the record thus far leads, I think, irresistibly to the conclusion that the employe did not meet with any accident arising out of and in the course of his employment on May 4th, 1933, either in the form of a sprain or a strain or the aggravation of a pre-existing condition despite the original finding of the referee to the contrary. This conclusion finds support in the failure of the employe to report the happening to the plant doctor on two occasions, and his improper proposal to the family physician to assist him in an attempted recovery against the Ford Company on the basis that he was injured in the plant. It is inconceivable that the employe, if he had been injured in the manner which he described, did not report it immediately and seek medical assistance. His story is unreasonable, illogical and improbable and is entitled to little weight. Then, too, Dr. Daly doubted whether the lifting of the table caused the angulation. When he operated and saw the actual condition, he

was impressed that the angulation was due to a congenital malformation. To doubt in such a situation is to deny. The man's disability and pain were caused by a dilatation of the ureter above the kink and the referee himself concluded that regardless of whether or not the employe had met with an accident, it would have been necessary for him to have the operation performed. With that conclusion of the referee I agree. Assuming, but not admitting the fact of the accident, and its happening aggravated a congenital condition, I agree with the referee's original determination that the disability arising therefrom was only temporary in character. That the employe is presently suffering from a disability as disclosed by the record is not denied, but this disability arises from the attempt to cure or to lessen the effect of a progressive, congenital condition from which the employe suffered. The record may be searched in vain for any credible proof of any causal connection between the alleged accident and his present disability.

I am not unmindful that the Workmen's Compensation act is remedial legislation and as such should be liberally construed. In the administration of the act regard must also be had to the substantive rights of employers and the general public, who in the last analysis pay the cost. They, too, are entitled to the even-handed administration of justice and to the equal protection of the laws.

Finding no causal connection between the employe's present disability and the happening of the alleged accident, the award for increased disability will be set aside.